UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NORMA SPRINGER, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| METROPOLITAN GOVERNMENT | )   NO. 3:20-cv-00202 |
| OF NASHVILLE & DAVIDSON | ) |
| COUNTY acting by and through THE | ) |
| ELECTRIC POWERBOARD of said | ) |
| GOVERNMENT d/b/a NASHVILLE | ) |
| ELECTRIC SERVICE, | ) |
| | ) |
|    Defendant. | |

**MEMORANDUM OPINION**

Norma Springer is suing her employer, the Nashville Electric Service ("NES"), under the Americans with Disabilities Act ("ADA"). Ms. Springer alleges NES failed to accommodate her hearing disability and unlawfully retaliated against her for requesting accommodations. NES filed a Motion for Summary Judgment. (Doc. No. 32). The Court will deny the motion as to Ms. Springer's failure-to-accommodate claim and grant it as to her retaliation claim.

**I.    BACKGROUND**

        A.    <u>Ms. Springer's Employment and Accommodation Request</u>

Ms. Springer began working for NES as a Service Advisor in May 2012. (Doc. No. 33-1 at 95). Two years later, NES promoted her to Service Advisor II. (Id. at 33). In that role, Ms. Springer's job was to speak with NES customers on the telephone. (Doc. No. 37 ¶ 5). She would help them establish electric service, answer their questions, and try to resolve their complaints, among other things. (Id. ¶ 6).

Ms. Springer suffers from bilateral otosclerosis, which causes hearing loss. (Id. ¶ 9; Doc. No. 36-4 at 33). By 2016, her hearing loss had become "severe to profound" in her right ear and "moderate" in her left ear. (Doc. No. 37 ¶ 9). Consequently, she had trouble hearing customers on the phone at work. (See Doc. No. 33-1 at 51).

NES took some measures to assist Ms. Springer. (Doc. No. 37 ¶ 15). For instance, it provided her with different headsets, which included noise-cancelling headphones and volume amplifiers. (Id.). However, these equipment changes did not alleviate Ms. Springer's difficulties. (Id. ¶ 16). She still could not hear customers with high-pitched voices because her condition prevented her from picking up on certain frequencies, which meant increasing the volume of calls through the headsets did not help her. (Id.; Doc. No. 33-1 at 48–49; Doc. No. 33-4 at 2).

Ms. Springer consulted with Dr. David Gnewikow, an audiologist. (Doc. No. 33-1 at 49; Doc. No. 36-4 at 29). According to Dr. Gnewikow, certain types of hearing aids could address Ms. Springer's issues. (Doc. No. 33-1 at 49; Doc. No. 36-4 at 30, 48). But due to Ms. Springer's difficulties picking up specific frequencies, a "simple hearing aid" would not do. (Doc. No. 36-4 at 29). The hearing aids he recommended cost thousands of dollars. (Id. at 49).

Based on Dr. Gnewikow's recommendation, in December 2016, Ms. Springer emailed NES and asked it to purchase hearing aids for her. (Doc. No. 33-1 at 49–52). She promised they would "be for work only" and offered to leave them at the office each day. (Doc. No. 33-4 at 2). NES rejected Ms. Springer's request; however, it offered to pay for the technology needed to sync hearing aids with NES' system if Ms. Springer paid for the hearing aids herself. (Doc. No. 33-1 at 69; Doc. No. 37 ¶ 17). NES also rejected Ms. Springer's subsequent request that NES purchase a captioned telephone system for her to use at work. (Doc. No. 33-1 at 73).

As a result, Ms. Springer applied for disability leave. (Id. at 100). NES granted her application in November 2017. (Id.). NES still pays Ms. Springer while she is on leave, although her salary is lower than it was before she took leave. (Id. at 93).

B. Procedural History

Ms. Springer sued NES under the ADA on March 8, 2020. (Doc. No. 1). The parties completed depositions and written discovery. (See Doc. No. 9). NES moved for summary judgment on September 3, 2021. (Doc. No. 32). The motion has been fully briefed. (Doc. Nos. 32, 33, 36, 38).

II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where there is "evidence on which the jury could reasonably find for the [non-moving party]." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

At the summary judgment stage, the moving party "has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Id. If the moving party meets its burden, "the nonmoving party, must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." Laster v. City of Kalamazoo, 746 F.3d 714, 726 (6th Cir. 2014).

When evaluating a summary judgment motion, the Court must view the record "in the light most favorable to the nonmoving party." Id. It must also accept the nonmoving party's evidence "as true" and "draw all reasonable inferences in [that party's] favor." Id. The Court "may not

3

Case 3:20-cv-00202 Document 40 Filed 11/02/21 Page 3 of 9 PageID #: 524

make credibility determinations nor weigh the evidence" in its analysis. Id. And although the Court "need consider only the cited materials," it "may consider other materials in the record" if it chooses. Fed. R. Civ. P. 56(c).

## III. ANALYSIS

### A. The ADA Prohibits Disability-Based Discrimination and Retaliation in Employment Settings.

The ADA bars discrimination in employment "on the basis of disability." 42 U.S.C. § 12112. Discrimination includes "not making reasonable accommodations" for disabled individuals, unless the accommodations "would impose an undue hardship." Id. Employers must provide reasonable accommodations in a variety of areas, including employees' "terms, conditions, and privileges of employment." See id.

The ADA also makes it unlawful for employers to retaliate against employees for engaging in activity protected by the ADA. Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014). "Protected activity typically refers to action taken to protest or oppose a statutorily prohibited discrimination." Id. (citation and quotation omitted). Where, as here, there is no "direct evidence" of retaliation,[1] courts employ the "McDonnell-Douglas burden-shifting framework" to evaluate retaliation claims. Brownlow v. Alfa Vision Ins. Co., 527 F. Supp. 3d 951, 951 (M.D. Tenn. 2021).

Under the burden-shifting framework, the plaintiff must first make a "prima facie showing of retaliation." Adair v. Charter Cty. of Wayne, 452 F.3d 482, 489 (6th Cir. 2006). This requires the plaintiff to demonstrate they suffered an adverse employment action, among other things. Id. "If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a

---

[1] Direct evidence "requires the conclusion that unlawful retaliation was a motivating factor in the employer's action." Spengler v. Worthington Cylinders, 615 F.3d 481, 491 (6th Cir. 2010) (citation and quotation omitted); see also Fisher v. Nissan N. Am., Inc., 951 F.3d 409, 416 (6th Cir. 2020).

4

legitimate, non-discriminatory reason for the adverse employment action." Id. If the defendant meets this burden, "the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext." Id.

> B. Ms. Springer's Claim that NES Failed to Accommodate Her Disability in Violation of the ADA Survives Summary Judgment.

To prevail on her failure-to-accommodate claim, Ms. Springer must demonstrate that (1) she is "disabled," (2) she is "qualified for [her] job," and (3) she was "denied a reasonable accommodation." Penny v. United Parcel Serv., 128 F.3d 408, 414 (6th Cir. 1997). NES appears to concede the first element. (Doc. No. 33 at 12–20). But it argues no reasonable jury could find in Ms. Springer's favor on the second and third elements. (Id.). The Court disagrees.

> > *1. Ms. Springer Has Presented Enough Evidence that She Is Qualified for Her Job to Preclude Judgment as a Matter of Law.*

A reasonable jury could find Ms. Springer is qualified for her job. Individuals are "qualified" for a position if they possess the "skill, experience, [and] education" it requires and can "perform the essential functions" of the job "with or without reasonable accommodation." 29 C.F.R. § 1630.2(m); see also Hedrick v. W. Rsrv. Care Sys., 355 F.3d 444, 456 (6th Cir. 2004). Ms. Springer possesses the skill, experience, and education needed to be a Service Advisor II; she held that position for three years. (Doc. No. 33-1 at 33; Doc. No. 37 ¶ 3). Further, a jury could reasonably conclude Ms. Springer can perform the essential functions of that job with the accommodation of hearing aids based on Dr. Gnewikow's testimony. (See Doc. No. 36-4 at 48 (discussing the "Phonak Bolero V70," which is the "model of hearing aid [Dr. Gnewikow] would recommend" for Ms. Springer, because it would "work well for her hearing loss")). Ms. Springer has shown she is qualified for her job under the ADA sufficiently to survive summary judgment.

5

NES argues, to the contrary, that Ms. Springer is not qualified for her job as a matter of law. (Doc. No. 33 at 15). It asserts that "[i]f an individual rejects an offered reasonable accommodation that is necessary to enable her to perform the essential functions of the position, 'the individual will not be considered qualified' under the ADA." (Id. (quoting 29 C.F.R. § 1630.9)). NES contends it proposed a reasonable accommodation by offering to sync Ms. Springer's hearing aids to NES' system if she purchased the hearing aids herself. (Id. at 15–16). According to NES, because Ms. Springer rejected that proposal, she is not qualified for her job under the ADA, and NES is entitled to summary judgment. (Id.).

NES is incorrect. Its own authority makes clear that an employee only ceases to be qualified for a job under the ADA if he or she "rejects a *reasonable* accommodation." Hedrick, 355 F.3d at 457 (emphasis added). Here, the parties dispute whether NES' proposal to sync hearing aids to its system, if Ms. Springer bought them, was reasonable. (Doc. No. 33 at 15–16; Doc. No. 36 at 18). And several fact-issues relevant to the reasonableness analysis remain unresolved. (See Doc. No. 36-1 ¶ 8). For instance, it is unclear whether Ms. Springer could have afforded hearing aids on her own.[2] (See id.). Indeed, Ms. Springer avers that purchasing hearing aids would have imposed a serious "financial hardship" on her. (Id.). And the Court must accept this statement "as true" at this stage. Laster, 746 F.3d at 726. Summary judgment is not appropriate based on NES' claim that Ms. Springer is not qualified for her job under the ADA.

---

[2] If she could not have afforded hearing aids, then a reasonable jury could find that NES' offer to sync her hearing aids to its system, on the condition that she purchase them independently, was not a reasonable accommodation proposal. See Talley v. Fam. Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1108 (6th Cir. 2008) (holding a "genuine issue of material fact" remained regarding the reasonableness of the defendant's proposed accommodation where it was unclear if the accommodation "would have been sufficient to allow [the plaintiff] to work her shift").

### 2. Ms. Springer Has Presented an Unresolved Factual Dispute Regarding Whether the Accommodations NES Rejected Were Reasonable.

A genuine dispute also remains regarding whether the accommodations that Ms. Springer requested, which NES refused to provide, were reasonable. Whether an accommodation is reasonable is a "highly fact-specific" inquiry. Anderson v. City of Blue Ash, 798 F.3d 338, 356 (6th Cir. 2015); see also Cassidy v. Detroit Edison Co., 138 F.3d 629, 634 (6th Cir. 1998). Matters relevant to that inquiry include the "employee's limitations and how those limitations can be overcome" at the job in question, the "effectiveness an accommodation would have," and the "preference of the employee." See Keever v. City of Middletown, 145 F.3d 809, 812 (6th Cir. 1998). A reasonable jury could find hearing aids were a reasonable accommodation because (1) they address Ms. Springer's limitation (hearing loss), (2) an audiologist suggests they could improve Ms. Springer's job performance, and (3) Ms. Springer expressed a preference for them.[3] (See Doc. No. 33-1 at 44, 50–52; Doc. No. 36-4 at 40, 48).

NES' claim that Ms. Springer's accommodation requests were unreasonable as a matter of law is unavailing. NES argues accommodations that are "primarily for the personal benefit of the disabled employee" are unreasonable and asserts hearing aids would principally benefit Ms. Springer in her personal life. (See Doc. No. 33 at 17–18 (citation omitted)). However, this argument highlights a dispute of fact between the parties. Ms. Springer asserts in her deposition that she "didn't want the hearing aids for personal use"; she only "wanted [them] for work." (Doc. No. 33-1 at 69; see also id. at 51 ("I was having no issues personally at home. I don't have to take orders at home. I don't have to listen to customers at home.")). And the record supports her claim. When she requested hearing aids, she told NES in an email that she "would be leaving the[m]" at

---

[3] Because the Court holds a reasonable jury could find Ms. Springer's request for hearing aids was reasonable, it need not decide if her request for a captioned telephone system was also reasonable.

7

NES, rather than taking them home, as they "would be for work only." (Doc. No. 33-4 at 2). Viewing the record in the light most favorable to Ms. Springer, it appears hearing aids would not primarily benefit her in her personal life. Hence, whether the accommodations she proposed were reasonable is an unresolved factual dispute preventing summary judgment.

      C.      <u>NES Is Entitled to Summary Judgment Regarding Ms. Springer's Retaliation Claim.</u>

NES contends Ms. Springer has failed to establish a prima facie retaliation case. (Doc. No. 33 at 21). The Court agrees.

To present a prima facie retaliation case, Ms. Springer must show that "(1) she engaged in activity protected by [the ADA]; (2) the defendant knew of her exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against [her]; and (4) there was a causal connection between [the] protected activity and the adverse employment action." <u>Steward v. New Chrysler</u>, 415 F. App'x 632, 643–44 (6th Cir. 2011) (quotation omitted).

Ms. Springer has not shown she suffered an adverse employment action. "To be adverse, a retaliatory action must be enough to dissuade a reasonable person from engaging in [a] protected activity." <u>A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.</u>, 711 F.3d 687, 698 (6th Cir. 2013). An "unfavorable change in job status" resulting in a "loss of pay" may be adverse. <u>Barrett v. Lucent Techs., Inc.</u>, 36 F. App'x 835, 841 (6th Cir. 2002). Ms. Springer claims she suffered an adverse action by taking disability leave, which resulted in lower pay, because NES "forced" her to do it.[4]

---

[4] She also appears to argue NES acted adversely toward her by (1) refusing to provide her requested accommodations and (2) offering her a disability application when she asked about available accommodations. (Doc. No. 36 at 23–24). The Sixth Circuit has rejected a similar argument in a similar case. <u>See</u> <u>McCrary v. Ohio Dep't of Hum. Servs.</u>, 205 F.3d 1341 (6th Cir. 2000) (rejecting plaintiff's argument that "defendants retaliated against him by refusing to make a reasonable accommodation for his alleged sleeping disorder" where "defendants tried to accommodate his disability" by, among other things, "offering him disability retirement").

(Doc. No. 36 at 23). But the record contradicts that claim. Ms. Springer *requested* disability leave. (Doc. No. 33-1 at 92–93). And she has identified no evidence a reasonable jury could use to find NES coerced her into making that request.[5] Absent such evidence, NES' decision to grant Ms. Springer's application for leave is not an adverse action. See Weaver v. City of Twinsburg, 580 F. App'x 386, 391 (6th Cir. 2014) (although "a suspension without pay is an adverse employment action," it is not an adverse action where the plaintiff "chose the suspension"); Stayner v. Ohio Dep't of Rehab. & Corr., No. 2:09-CV-752, 2011 WL 3900617, at *10 (S.D. Ohio Sept. 6, 2011) (rejecting plaintiffs' argument that she "suffered an adverse employment action when she took disability leave").

Because Ms. Springer has failed to show that she suffered an adverse employment action, the Court finds summary judgment is proper as to her retaliation claim.

## IV.    CONCLUSION

For the foregoing reasons, NES' Motion for Summary Judgment (Doc. No. 32) will be granted in part and denied in part.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Ms. Springer claims NES forced her to go on disability leave because "NES told [her] if she could not do her job, she would be fired." (Doc. No. 36 at 24). However, "evidence that [NES] threatened to discharge [Ms. Springer] is too ambiguous to satisfy the adverse employment action requirement" given that "the alleged threat merely stated the possibility of [a] discharge." See Hollins v. Atl. Co., 188 F.3d 652, 662 (6th Cir. 1999); see also Plautz v. Potter, 156 F. App'x 812, 817 (6th Cir. 2005) ("[I]t is settled in this circuit that a threat to discharge is not an adverse employment action."); Gregory v. NIC Glob., No. 2:13-CV-0016, 2014 WL 2919154, at *5 n.13 (M.D. Tenn. June 27, 2014) (noting a "threat to discharge by itself is not an adverse action").